IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| RICHARD EPTON, | ) | |
| --- | --- | --- |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CIV-18-356-STE |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, | ) ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

I. **PROCEDURAL BACKGROUND**

Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for benefits. (TR. 13, 147-149, 154-157, 158-161, 173-175). Following an administrative hearing, Administrative Law Judge ("ALJ") Jennie L. McLean issued an unfavorable decision on April 4, 2017. (TR. 13-28). The Appeals Council ("AC") denied

Plaintiff's request for review on February 22, 2018. (TR. 1-5). Thus, the decision of the ALJ became the final decision of the Commissioner.[1]

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of August 1, 2012. (TR. 15). At step two, the ALJ determined that Mr. Epton had the severe medically determinable impairments of anxiety disorder, depressive disorder, diabetes mellitus, and bilateral upper extremity tremors. (TR. 15). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 16).

The ALJ next determined that Plaintiff retained the residual functional capacity (RFC) to:

> Perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant may not climb ladders, ropes, or scaffolds. The claimant is limited to frequent bilateral reaching, handling, and fingering with his upper extremities. The claimant is limited to simple and some complex tasks of 1-4 steps, with routine supervision. The claimant may engage in occasional public contact but may not work customer service positions. The claimant is able to interact appropriately with supervisors and co-workers. The claimant has the capacity to adapt to work situations and some changes in work setting.

---

[1] The record contains a report from the Cooperative Disability Investigations Unit ("CDI"). (TR. 355-362). On January 20, 2015, two agents from the Oklahoma Attorney General's office interviewed Plaintiff at his residence to investigate allegations "of fraud/similar fault because of conflicting evidence", following a referral from the Social Security field office in Chickasha. (TR. 356). The ALJ cited Plaintiff's behavior at this interview when assessing the consistency of his testimony concerning his hand tremors with the medical record. (TR. 23-24). However, the report does not reach any final conclusions concerning the validity of the fraud allegations, and there is no evidence that CDI pursued the matter further.

(TR. 17-18). At step four, the ALJ relied on vocational expert ("VE") testimony to find that Plaintiff could perform his past relevant work as an unloader. (TR. 26-27, 58-59). The ALJ then made alternative step five findings, considering whether there were jobs existing in significant numbers in the national economy that Plaintiff—in view of his age, education, work experience, and RFC—could perform. Relying upon VE testimony, the ALJ found that there were four other light or medium, unskilled jobs Plaintiff could perform given his RFC. (TR. 27-28, 59-60). Therefore, the ALJ determined that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant period. (TR. 28).

## III. ISSUES PRESENTED

On appeal, Plaintiff alleges that the ALJ erred by finding that Plaintiff had only moderate limitations in interacting with others. (ECF No. 13:3-9).

## IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V.     THE ALJ'S PARAGRAPH B CRITERIA EVALUATION

Plaintiff argues that the ALJ erred in finding that he had only moderate limitations in interacting with others. Specifically, Plaintiff contends that his ability to interact with others was "more much limited", and that "even under the ALJ's current (improper) moderate finding and her reasoning, the RFC was flawed as it did not appropriately limit the interaction with others." (ECF No. 13:4). Plaintiff cites the ALJ's "B" criteria analysis, and references the results of an October 2014 mental status examination, cited by the ALJ, which indicated that Plaintiff had difficulty functioning socially and poor impulse control. (ECF No. 13:4), (TR. 16, 457-458).

Plaintiff contends that the ALJ's reasoning is not consistent with "moderate" limitations in interacting with others, and that a finding of "marked" or "extreme" limitations in this domain would have been more consistent with the ALJ's findings. (ECF No. 13:4). Plaintiff argues that the medical record supports more serious limitations with respect to interacting with others, and that this case should be remanded so that the ALJ can "appropriately match the rating of limitation with [the ALJ's] own severe findings" and notes that if the ALJ had assessed "extreme" limitations in interacting with others his mental impairments would meet either Listing 12.04 or Listing 12.06. (ECF No. 13:7). Citing the medical record, Plaintiff argues that an extreme limitation would be appropriate because Plaintiff "cannot function independently or on a sustained basis" and that his mother "must care for [Plaintiff's] every need." *Id.* Plaintiff further argues that the ALJ improperly discounted the severity of his condition because the ALJ found that Plaintiff's condition was normal "except for depressed mood/affect." (ECF No. 13:6). Plaintiff argues that the ALJ failed to recognize that Plaintiff's depressed mood and affect "makes his

mental condition *abnormal*" (emphasis in original). *Id.* Plaintiff contends that this and other assumptions[2] "likely played a key role" in the ALJ's finding that Plaintiff "was only moderately limited in his ability to interact with others." *Id.*

Plaintiff argues that the ALJ's decision "clearly indicates" that the ALJ accepts that Plaintiff has "consistent difficulty getting along with others, including his mother", and that a moderate limitation in interacting with others "does not at all account" for the severity of Plaintiff's symptoms. (ECF No. 13:6-7). Plaintiff testified at the administrative hearing that he spends two or three days of the week isolating himself in his room, that his mother tends to all his daily needs, and that he does not interact socially with anyone on a daily basis. (TR. 50-51). Plaintiff indicated that his mother provides for his basic needs, including food, transportation, and housing. (TR. 456). In his function report, Plaintiff stated that he sometimes goes to his brother's house to use his computer, but that he has difficulty getting other people to understand him, and stated that he no longer attends church services. (TR. 295). Plaintiff stated that he gets along well with authority figures "if they are reasonable", and that he quit his job at Walmart because he "couldn't do anything right" for his employer. (TR. 296).

The dispositive question here is whether the ALJ's assessment of "moderate" limitations in interacting with others is supported by substantial evidence. In evaluating Plaintiff's ability to interact with others, the ALJ found that Plaintiff "consistently reported difficulty getting along with others, including his mother in particular" and that while Plaintiff reported "a tendency towards social withdrawal, and social isolation" he did report having friends. (TR. 16). In considering Plaintiff's mental impairments more

---

[2] *See infra* note 3 and accompanying text.

5

generally, the ALJ discussed Plaintiff's treatment history at length, concluding that Plaintiff's psychiatric impairments

> impose some limitations on his functional capacity, but are not so severe as to entirely prevent him from working. As noted above, the claimant's treatment notes include a plethora of mental status examinations throughout the relevant period which all suggest that he has no deficits to memory, attention/concentration, or insight/judgment. Furthermore, numerous mental status examinations do not even note that the claimant has a depressed or anxious affect. However, his treatment records have consistently reported that the claimant has some difficulties interacting appropriately with others, although these notes primarily suggest that the claimant simply has difficulty interacting with his mother in particular. However, giving the claimant the benefit of the doubt, the undersigned finds that the claimant's psychotic impairments are sufficiently severe as to limit his capacity to perform certain tasks. The undersigned also finds that the claimant has limited ability to relate to others, and some limits to adaptation in work settings.

(TR. 19-21). The ALJ further found that Plaintiff's mental impairments were generally stable on medication.[3] (TR. 25). In evaluating the opinion evidence[4] concerning Plaintiff's mental impairments, the ALJ assigned little weight to the opinion of William Cooper, D.O., who opined that Plaintiff had "marked" limitations in performing activities of daily living

---

[3] Plaintiff contends that the ALJ drew an improper inference from the medical record by indicating that Plaintiff's mental condition was "stable" on medication. (ECF No. 13:6). Specifically, Plaintiff alleges that the term "stable" could mean that Plaintiff's condition "has not changed", and that he could "be stable *at a low functional level*." *Id.* (emphasis in original). In support of this argument, Plaintiff cites a Second Circuit opinion in which the Court found that the ALJ in that case interpreted reports of Plaintiff's "stable" condition "to mean that [the Plaintiff's] condition has been good, when the term could mean only that her condition has not changed, and she could be stable at a low functional level." *Kohler v. Astrue*, 546 F.3d 260, 268 (2nd Cir. 2008). Plaintiff is correct that the precise meaning of the term "stable" could vary depending on the nature of Plaintiff's treatment history. However, in this case, Plaintiff's argument is speculative, and he has not presented evidence to establish that such an alternative interpretation is justified by the record, nor has he presented an argument that adopting this interpretation would necessarily impact Plaintiff's residual functional capacity.

[4] The ALJ did not discuss or weigh the opinions of State agency psychological consultants Laura Lochner, Ph.D., and Jason Gunther, Ph.D. Both Dr. Lochner and Dr. Gunther found that Plaintiff had "moderate" limitations in social functioning, and further found that Plaintiff could relate to others on a superficial work basis. (TR. 71-72, 74-75, 82-83, 85-87, , 98-99, 102-103, 111-112, 115-116, 124-126, 128-130, 138-140, 142-144).

and maintaining social functioning, "constant" deficiencies with respect to maintaining concentration, persistence, and pace, and "continual" episodes of deterioration and decompensation. (TR. 536-549). The ALJ found that Dr. Cooper's opinion "consisted solely of checking boxes", appeared to be based exclusively on Plaintiff's subjective allegations, and that Dr. Cooper offered little support for his opinion "beyond a list of [Plaintiff's] current diagnoses and medications." (TR. 26). The ALJ further found that Dr. Cooper assessed "very severe" limitations that were inconsistent with Plaintiff's treatment history, which indicated that Plaintiff "was stable on medications and doing well." *Id.* The ALJ noted that Dr. Cooper provided "no accompanying narrative or explanation providing such relevant information as the severity or specific, limiting effects" of Plaintiff's impairments. *Id.*

With respect to the Paragraph B criteria, Social Security regulations provide that an individual with a "moderate" mental limitation has a "fair" ability to function "independently, appropriately, effectively, and on a sustained basis." The regulations provide that an individual with a "marked" limitation has a "serious" limitation in functioning, and that a person with an "extreme" limitation is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P., App. 1 (F)(2)(c)-(e).

The ALJ has evaluated the relevant medical and opinion evidence and provided a detailed rationale for why she opted to assess a "moderate" limitation in interacting with others. There may be an interpretation of the record that supports a "marked" or "extreme" limitation in this domain. There is certainly an argument that a "marked" limitation would be more consistent with Plaintiff's testimony concerning his impairments.

7

However, whether Plaintiff's symptoms are consistent with a "moderate", "marked", or "extreme" limitation is a judgment for the ALJ. The ALJ's assessment of moderate limitations in interacting with others, as well as the mental restrictions contained in the RFC, are broadly consistent with the ALJ's evaluation of the record. Adopting Plaintiff's interpretation of the record would amount to re-weighing the evidence and substituting the court's judgment for that of the Commissioner in a manner inconsistent with Tenth Circuit case law. *See Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008); *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."). As such, the ALJ's decision is supported by substantial evidence.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on November 15, 2018.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE